IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER BROWN, | : | CIVIL ACTIONS |
| | : | |
| Plaintiff, | : | NO. 05-4160 |
| | : | |
| v. | : | NO. 06-2496 |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | NO. 06-5408 |
| | : | |
| Defendants. | : | NO. 08-3369 |

## OPINION

Slomsky, J.                                                        April 14, 2009

### I. Introduction.

Before the Court are Plaintiff Alexander Brown's four consolidated cases filed without payment of fees or security, asserting claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1988. Plaintiff's Complaints name over forty different individuals and entities as Defendants. The Court has spent countless hours deciphering the handwritten Complaints which contain dozens of accusations but lack supporting evidence.

In each case, Plaintiff is proceeding pro se and, with the exception of Civil Action No. 08-3369, Plaintiff has been granted in forma pauperis status. Plaintiff has been filing civil rights actions since approximately 1996. They are essentially similar in content. He has filed least thirty-five pro se civil actions under at least three different names.[1]

Prisoners who have brought three or more civil actions that a court has dismissed as frivolous, malicious, or for failure to state a claim are generally precluded from bringing further actions in forma pauperis. 28 U.S.C. § 1915(g). On three or more occasions, Plaintiff's federal cases have been dismissed as frivolous, malicious, or for

---

[1]     See discussion infra pages 4-15 and accompanying text.

failure to state a claim upon which relief can be granted.  However, 28 U.S.C. § 1915(g) further provides that a prisoner who has had three prior actions dismissed on these grounds will nonetheless be able to file actions if "the prisoner is under imminent danger of serious physical injury."[2]  Plaintiff has continued his filings by use of this imminent danger exception.  However, a court may challenge a Plaintiff's allegation of imminent danger.  Considering the large number of Plaintiff's filings, the three identities used by Plaintiff, and the resources needed to decipher Plaintiff's Complaints, it is appropriate for the Court to examine the "reasonableness and necessity of permitting further unrestrained use of the right of free access to the courts by this litigant."  In re Francis Lee Jenkins, Misc. No. 88-0068, slip op., at *2 (E.D. Pa. Feb. 5, 1988).

In addition to examining Plaintiff's filings, the Court scheduled a hearing in order to assess the credibility of Plaintiff's claim that he is in imminent danger.  On February 18, 2009, the Court issued two Show Cause Orders, scheduling a hearing on March 6, 2009.  The Orders provided notice to the parties of the purpose of the hearing.  The first order required Plaintiff Alexander Brown to appear to Show Cause why:

> 1. The above-captioned civil cases should not be dismissed on the grounds that they are frivolous, malicious or fail to state a claim;
>
> 2. A pre-filing injunction should not be issued which would bar Plaintiff from filing in the future any civil actions in this Court without first seeking permission of the Court to file the civil action, in view of the fact

---

[2]     28 U.S.C. § 1915(g) provides in full:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

that Plaintiff has brought three (3) or more actions in this Court which have been dismissed on prior occasions on the grounds that they are frivolous, malicious or fail to state a claim as referred to in 28 U.S.C. § 1915(g);

3. Plaintiff should be allowed to proceed in forma pauperis and not be required to pay the appropriate full filing fee required by this Court for all complaints and/or motions filed;

4. Plaintiff as a prisoner held in custody of Defendant City of Philadelphia is in imminent danger of serious physical injury.

The second order required Counsel for Defendants to appear to "Show Cause why Plaintiff Alexander Brown as a prisoner held in custody by Defendant is not in imminent danger of serious physical injury as referred to in 28 U.S.C. § 1915(g)."

The Show Cause hearing was held on March 6, 2009. The following parties were present at the show cause hearing: Plaintiff, representing himself; Mark Maguire, Esquire, representing Defendant City of Philadelphia; Mr. Robert M. Waller, Esquire, representing Defendant SEPTA; and John D. Kutzler, Esquire, representing Defendant Saint Joseph's Hospital.[3] Deputy Warden Gerald May testified on behalf of the City of Philadelphia. The Court made clear at the hearing, as it had in its Show Cause Orders, that the purpose of the hearing was to determine the credibility of Plaintiff's civil rights claims and the claim of imminent danger of serious physical injury.

For reasons that follow, the Court will dismiss Plaintiff's four consolidated complaints and will impose a pre-filing injunction on Plaintiff. The Court will present the factual background of the case, including Plaintiff's open civil actions. The Court

---

[3]      In Civil Action No. 05-4160, Plaintiff named St. Joseph's Hospital as a Defendant, alleging that the Hospital had subjected to him to inhumane treatment and cruel and unusual punishment. See also footnote 15, infra. Plaintiff's allegations against SEPTA are referred to in Civil Action 06-5408 and allege that SEPTA officers engaged in improper actions in contravention of SEPTA policies while participating in Plaintiff's arrest.

will then present its factual findings.  An examination of Plaintiff's filings and the record of the Show Cause Hearing held on March 6, 2009 shows that Plaintiff has fallen significantly short of establishing that he is in imminent danger, that his claims have merit, or proving that his litany of allegations have actually occurred.  Because Plaintiff is not in imminent danger, Plaintiff should not be able to file civil actions in forma pauperis. Moreover, because his consolidated actions lack merit, the open civil actions should be closed.  The Court also imposes a pre-filing injunction on Plaintiff, prohibiting Plaintiff from filing future civil actions without first seeking leave of Court and attaching required documentation.

The Court is mindful that a judicially-imposed restriction on an individual's access to court constitutes an extreme remedy for frivolous litigants.  However, the Court of Appeals has held that "a continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filings of complaints without the permission of the [C]ourt." In re Oliver, 682 F.2d 443, 446 (3d Cir. 1982).  With these considerations in mind, the Court has determined that it is proper to serve Plaintiff with a pre-filing injunction pursuant to 28 U.S.C. 1651(a)[4] due to his history of frivolous and vexatious filings.

## II. Factual Background.

Plaintiff has brought at least forty complaints against numerous defendants for alleged injuries suffered as a result of his various arrests and imprisonments over the past

---

[4]     This statute gives the Court the power to serve a pre-filing injunction on Plaintiff where the Court deems it appropriate.  See 28 U.S.C. § 1651(a).

thirteen years.  Plaintiff has used the names "Alexander Brown," as well as "John Hooks" and "Gene Bowman,"[5] to file his many complaints and motions.  None of Plaintiff's previous complaints has resulted in the award of damages.

Over the past thirteen years, Plaintiff has been incarcerated except for about one year.  He was initially arrested for retail theft.  (Transcript of Show Cause Hearing, March 6, 2009 ["Transcript"] at 38-39).  Plaintiff is homeless and resides on the street when released from jail.  Since 2007, Plaintiff has been released from prison on two occasions.  Both times, he was arrested within a week of being released.  See id. at 38.

Deputy Warden May testified at the Show Cause Hearing that he believes "every time Mr. Brown is incarcerated in the Philadelphia Prison System, he's placed in protective custody."  (Id. at 63).  He believes that Plaintiff has been in protective custody since 2005, when the earliest of the four consolidated cases was filed.  (Id. at 63-64).  Prisoners in protective custody "do not have no [sic] contact with general population."  (Id. at 64).  When "they are transported from one area of the jail to another jail with general population," "they're always escorted at all times by staff."  (Id.).

---

[5]     The Court is only aware of one filing by Plaintiff under the name "Gene Bowman."  In civil action 04-0584, Plaintiff filed a habeas petition under 28 U.S.C. § 2254.  The docket was five pages, consisted of one habeas petition, one amended habeas petition, ten original motions, and was filed against four defendants.  See Civil Docket for No. 04-0584.  Magistrate Judge Arnold C. Rapoport recommended that the Court deny Plaintiff's § 2254 petition without prejudice and that the Court dismiss the claim because Plaintiff failed to show probable cause to issue a certificate of appealability.  Bowman v. Comm. App. Ct. of Pa. et. al., 2004 WL 1686953 at *3 (E.D. Pa. 2004).  District Judge Norma Shapiro ultimately determined that Plaintiff's habeas petition was actually a motion for reconsideration and denied the petition.  Bowman v. Comm. App. Ct. of Pa. et. al., 2004 WL 2862295 at *1-2 (E.D. Pa. 2004).

Warden May further explained that protective custody is either requested or court ordered.  Plaintiff is in protective custody at his own request.  (Id.).  The Court questioned why a prisoner is placed in protected custody.  The Warden responded:

> WARDEN:      [O]ne is in protective custody . . . when they . . . fear for their own safety from other inmates or staff or whatever they feel they need protection from.
>
> COURT:       Okay.  And you honor that request to make sure they're not in imminent danger.
>
> WARDEN:      Correct.

(Id.).

Plaintiff is moved to different prisons within the Philadelphia Prison System every ninety days.[6]  See id. at 65.  These transfers occur, according to Warden May, in order to give each institution a break from the "chaos" initiated by Plaintiff.  (Id. at 73).  Warden May clarified what he meant by "chaos":

> WARDEN:      What I'm talking about is that sometimes, your – your radical political outbursts, your flooding of the cells, the writing on the walls, the writing with feces, the smearing of feces on the wall, smearing of feces on the cell door, the chaos that you cause while you're in your cell and the population is out, you know, with population.  Every time you come out . . . population is put back in their cell to move you, in order to move or exercise you, and that dampers the exercise of the other 2,999 inmates[.]

(Id. at 74).

---

[6]      During the Show Cause Hearing, Plaintiff suggested that he might be moved as often as every sixty days.  (Transcript at 66).

While incarcerated, Plaintiff has filed numerous civil actions.[7]  Using all three aliases, Plaintiff has had at least thirty-five civil actions dismissed by the Court.[8]  They are:

> (1) Civil Action No. 97-2532; (2) Civil Action No. 97-2533; (3) Civil Action No. 97-2534; (4) Civil Action No. 97-2584; (5) Civil Action No. 97-6900; (6) Civil Action No. 98-1059; (7) Civil Action No. 98-6019; (8) Civil Action No. 99-0742; (9) Civil Action No. 99-1268; (10) Civil Action No. 99-1269; (11) Civil Action No. 99-2713; (12) Civil Action No. 4189; (13) Civil Action No. 99-6536; (14) Civil Action No. 00-1385; (15) Civil Action No. 00-3303; (16) Civil Action No. 00-5661; (17) Civil Action No. 01-5342; (18) Civil Action No. 01-5343; (19) Civil Action No. 01-5901; (20) Civil Action No. 01-5902; (21) Civil Action No. 03-1578; (22) Civil Action No. 03-2342; (23) Civil Action No. 03-3236; (24) Civil Action No. 03-4135; (25) Civil Action No. 04-0584; (26) Civil Action No. 04-2032; (27) Civil Action No. 04-2061; (28) Civil Action No. 04-2184; (29) Civil Action No. 05-5844; (30) Civil Action No. 06-2445; (31) Civil Action No. 06-4578; (32) Civil Action No. 06-5091; (33) Civil Action No. 07-1527; (34) Civil Action No. 07-5365; and (35) Civil Action No. 08-4206.

Currently, Plaintiff's four consolidated civil actions remain open in this Court, while one civil action (Civil Action No. 07-4971) is on appeal to the Third Circuit. (Transcript at 28).  Plaintiff has filed these actions pro se.  In several actions, Plaintiff has requested counsel.  The Court appointed counsel in prior actions by providing Plaintiff with pro bono representation from the law firms of Cozen O'Connor, Dechert LLP, and

---

[7]      In addition to filing actions in federal court, Plaintiff has also filed a number of grievances internally with the prison system and with other persons.  At the Show Cause Hearing, Plaintiff submitted copies of fifty (50) sick call requests (dated from 11/10/07 to 3/4/09), seventy (70) inmate grievance forms (dated from 11/12/07 to 3/5/09), thirty-two (32) requests to staff (dated from 11/8/07 to 2/7/09), one inmate disciplinary hearing appeal (dated 7/2/08), and one letter and complaint from Plaintiff Alexander Brown to Philadelphia Mayor Michael Nutter, et al. (dated 9/30/08).  These exhibits were marked collectively as Plaintiff's Exhibit No. 1 at the Show Cause Hearing.  On April 9, 2009, Plaintiff submitted a filing containing an additional sick call request and four (4) inmate grievance forms that he did not have with him at the Hearing.  (See Civ. Action No. 06-5408, Doc. No. 100).

[8]      Civil Action 03-2342 appears to be the first action in which Plaintiff used the name "Alexander Brown" in a filing in the Eastern District of Pennsylvania.

Saul Ewing LLP.   Brown v. City of Phila., 2007 WL 2221421 (E.D.Pa. 2007) (J. Buckwalter).  In those prior actions, counsel determined that Plaintiff's claims had no merit and so informed the Court by letter.  Id.  Counsel was subsequently relieved of their representation.

Plaintiff has also filed these civil actions, except for 08-3369, in forma pauperis. The Court is mindful that Plaintiff does not have the resources to pay a filing fee.[9]  As noted, Plaintiff has been incarcerated twelve of the past thirteen years.  Because he is held in protective custody while incarcerated, he is unable to perform paid labor.

The four open complaints will be summarized in turn, affording Plaintiff's allegations the highest degree of deference possible given the quality and legibility of Plaintiff's handwritten complaints.

A.   ***Civil Action No. 05-4160*** – ***Brown v. City of Philadelphia et. al.***

Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 1981,[10]

---

[9]     Prisoners who submit certified copies of their trust fund account statement showing that they do not have the ability to pay a filing fee may be permitted to proceed in forma pauperis.  28 U.S.C. § 1915(a)(2).  An "indigent citizen[]" has an "interest in access to the district court" and should not be prohibited from bringing suit merely because of an inability to pay.  Abdul-Akbar v. Watson, 901 F.2d 329, 333 (3d Cir. 1990).

[10]     Plaintiff invokes § 1981 in various forms throughout his civil actions to assert multiple types of "equal benefits he feels he should be entitled to."  42 U.S.C. § 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property . . . .

1983,[11] and 1985[12] against numerous Defendants alleging "imminent danger of serious bodily injury and psychological harm." (Amended Complaint at 1). When the Complaint was filed on August 3, 2005, Plaintiff was a pretrial detainee of the Philadelphia Prison System at the Philadelphia Industrial Correction Center located at 8301 State Road, Philadelphia, PA 19136. (Id.). The docket for this action is twenty-three (23) pages, and contains one complaint, two amended complaints, and fifty-one (51) motions filed by Plaintiff.

Defendants in this action include: the City of Philadelphia, Saint Joseph's Hospital, Commissioner Leon King II, Deputy John Murphy, Correctional Officer Bartacor, Correctional Officer Woodson, Warden Blackmon, Deputy Warden George Peoples, Six John Doe Police Officers, Marvin Cooper, Lieutenant Dewy, Aramark Food Inc., Correctional Officer Brown, and Correctional Officer Gains. (Id. at ¶¶ A-H).

In this Complaint, Plaintiff has alleged, inter alia: assault; retribution in response to his previous filings against defendants; unnecessary and excessive force, resulting in

---

[11]     Plaintiff's civil actions contain allegations of § 1983 violations.  42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

[12]     Plaintiff alleges throughout his complaints that Defendants deprived him of various civil rights.  42 U.S.C. § 1985 provides protection from officers conspiring to deprive prisoners of their civil rights.

wounds; denial of medical treatment regarding high blood pressure; refusal of sick call; unlawful opening of mail; cruel and unusual punishment and inhumane treatment in the way he was served food; a conspiracy by Defendants to "terroristically threaten" him; having a mouse placed strategically in his meals to cause imminent danger of serious physical and psychological harm; the allowance by Defendants to subject Plaintiff to assaults from other inmates; acquiescence in the assault by Defendants for refusing to protect Plaintiff from assault by other inmates; a two-month unnecessary wait for surgery; that he was sodomized by a police officer with "nefarious intentions" after passing out from a "false arrest" on May 27, 2005; that he was urinated on as a result of this arrest; and insufficient training of employees by Defendants Aramark and the City of Philadelphia.  (See generally id.).

Similar to his alleged damages in other actions, Plaintiff's alleged damages in this action include: loss of employment, financial difficulty, post-traumatic stress, battered man syndrome, panic attacks, mental anguish, black outs, dizzy spells, back and neck problems, damaged eye sight, and a broken right finger.  (Id. at 21).  Plaintiff sought to recover $10,000 individually from each Defendant and $100,000 jointly as compensatory and punitive damages.  (Id.).

B.  **Civil Action No. 06-2496** – **Brown v. City of Philadelphia et. al.**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 1983, 1981, 1985, and 1988 against numerous Defendants alleging "imminent danger of serious bodily injury and psychological harm."  (Amended Complaint at ¶¶ A-C).  At the time of filing, June 13, 2006, Plaintiff was a pretrial detainee of the Philadelphia Prison System at the Prison

Health Service located at 7901 State Road, Philadelphia, PA 19136.  (Id. at ¶ 43).  The docket for this action is twenty (20) pages, and contains one complaint, one amended complaint, and forty-eight (48) motions filed by Plaintiff.

The sixteen Defendants in this action include: the City of Philadelphia, Commissioner Leon King, Deputy Commissioner John Murphy, Officer Woodson, Prison Health Services Inc. ("PHS"), the Philadelphia Prison Mental Health Department, PHS Regional Director of Records, PHS Regional Director of Medicine, Lieutenant Mary Hull, Sergeant Tyrone Robertson, Dr. Brown, Lieutenant Sweeny, Doctor Mitchell Kho, James Sheffer, Officer M.A, Rodriguez, and All Deputy Commissioners of the Prison. (Id. at ¶ 1-12).

Plaintiff alleges violations of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments.  He claims that he suffered emotional withdrawal trauma, paranoia, emotional distress, psychological withdrawal, panic attacks, stress, mental health issues, depression, serious physical harm, vision impairment, and cruel and unusual punishment as a result of those violations.  (See generally id.).

In this complaint, Plaintiff has alleged, inter alia, the following actions by Defendants: being forced to stay in his cell during a sprinkler malfunction in which he was sprayed with harmful black chemicals and cold water; lack of assistance and refusal of medical treatment following the malfunction, despite suffering possible frost bite and hypothermia; "terroristic threats"; allowing other inmates to assault Plaintiff; poisoning his food; offering to pay other inmates to kill Plaintiff; reckless disregard for his life; videotaping hypothermic panic attacks and seizures, in violation of his medical rights to privacy and confidentiality; destruction of his medical records; disregard of imminent

mental harm; improper discretionary policies towards inmates; excessive force; that on April 3, 2006, a vast conspiracy materialized to force his commitment by the Mental Health Court; neglect and failure to provide Plaintiff medical care for serious medical needs from 2/24/06-3/1/06; and improper investigations into Plaintiff's claims against PHS. (Id.).

Plaintiff sought to recover $100,000 compensatory and $50,000 punitive damages from Defendants individually and $300,000 jointly. Plaintiff also requested an injunction granting him immediate transfer to another jail to serve the best interests of all parties. (Id. at ¶ 43).

### C. _Civil Action No. 06-5408_ – *Brown v. City of Philadelphia et. al.*

Plaintiff filed this action pursuant to 42 U.S.C. §§ 1983, 1981 and 1985 against numerous Defendants alleging "imminent danger of serious bodily injury and psychological harm." (Amended Complaint at ¶¶ 1-4. At the time of filing, December 8, 2006, Plaintiff was a pretrial detainee of the Philadelphia Prison System at the Prison Health Service located at 7901 State Road, Philadelphia, PA 19136. (Id. at ¶ 5(b)). The docket for this action is fourteen (14) pages, and contains one complaint, one amended complaint, and twenty-eight (28) motions filed by Plaintiff.

The thirteen Defendants include: the City of Philadelphia, the State of Pennsylvania, Southeastern Pennsylvania Transportation Authority Corporation ("SEPTA"), the SEPTA Police Department, the Commissioner of the SEPTA Police Department, SEPTA Police Officer Burbon, SEPTA Police Officer Gordon and/or John Doe(1) and John Doe(2), Police Commissioner Sylvester Johnson, Prison Commissioner

Leon King II, PHS Inc. Philadelphia Police Officer Rivera, Detention Officer Knox, Sergeant Tyrone Robertson, and a Jane Doe.  (Amended Complaint at ¶ 5).

Plaintiff's alleged injuries are similar to the ones described in his other civil actions.   Plaintiff alleges First, Fourth, Fifth, Sixth, and Fourteenth Amendment violations.   He claims to have experienced emotional withdrawal trauma, paranoia, emotional distress, psychological withdrawal, financial setbacks, loss of employment opportunities, panic attacks, stress, mental health issues, depression, and serious physical harm.  (See generally id.).

Plaintiff's numerous allegations against Defendants, similar to those made in other cases, include: denial of access to mail and telephone for legal purposes; conspiring with inmates to harass, intimidate, and threaten him; inhabitable living conditions; forcing him to stay in his cell while "sub zero" temperature water was sprayed into his cell; allowing another inmate into Plaintiff's cell to attack him with a homemade weapon; verbal and physical abuse with terrorist intentions; offering inmates "payment in contraband" to attack Plaintiff; a breach of contract of prison policy; being subjected to "unnecessary, unreasonable, excessive use of malicious" force when being taken to a holding cell; repeated beatings; being stripped nude and held for twelve hours; deprivation of medical care following attacks; insufficient training and actions of SEPTA officials; unlawful arrest by SEPTA; unnecessary use of force by SEPTA officials on November 4, 2006; lack of a preliminary arraignment; prejudice against Plaintiff by the State; improper training of state and prison officials; and improper confiscation of video footage of the alleged events.  (Id.).

Plaintiff sought to recover $100,000 compensatory and $100,000 punitive damages from Defendants individually and $500,000 jointly. Plaintiff also requested a restraining and/or protective order in regard to his investigation and the unlawful confiscation of the video of his attacks. (Id. at ¶ 43).

### D. *Civil Action No. 08-3369* – *Brown v. City of Philadelphia et. al.*

Plaintiff filed this case pursuant to 42 U.S.C. § 1983 against numerous Defendants alleging "imminent danger of serious bodily injury and psychological harm." (Complaint at 2). At the time of filing, July 17, 2008, Plaintiff was a pretrial detainee of the Philadelphia Prison System, where he was confined at Prison Health Services located at 7901 State Road, Philadelphia, PA 19136. (Id. at 40). The docket for this action is seven (7) pages, contains one complaint, one amended complaint, and eleven (11) original motions filed by Plaintiff. Since this case originated in 2008, it does not contain as many filings.

Plaintiff filed this complaint against nineteen (19) Defendants, including: the City of Philadelphia; the State of Pennsylvania; Sergeant Moore; Officers Draughton, James, and Brown; Forensic Officers Chade and Mark; Nurse Oliver; Police Officers Gonzalez, Young, Patterson, and Hector Rivera; Detention Officer Champion; Ms. Malimi Mude; PHS Inc.; and several Jane and John Does. (Id. at ¶ 1).

Plaintiff's allegations against Defendants, which are similar to those in his other cases, include: actions intended to cause serious mental and physical harm; unnecessary use of excessive force; threats made regarding previous civil actions; a conspiracy between prison officials and the nursing staff to prevent Plaintiff's serious medical needs

from being tended to; being thrown nude into a cell for over five hours subjecting Plaintiff to cruel and unusual conditions; allowing other inmates to slide threatening letters into his cell; assault by prison officials resulting in broken bones; prison officers lying to prison officials about their conduct regarding Plaintiff; a misdiagnosis of diabetes causing serious harm despite Plaintiff's contentions he did not have diabetes; being tortured under the guidance of officers and a sergeant; being "tazered" with nefarious intent; and a conspiracy to cause legal setbacks by the courts.  (See generally id.).

Plaintiff's alleged injuries mirror those claimed to have been inflicted in his previous filings.  Plaintiff claims to have suffered First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment violations and, consequently, vision problems, dizzy spells, nightmares, blackouts, panic attacks, emotional distress, post traumatic stress, stress traumatically induced with fear, broken bones, permanent physical injuries, and unlawful conditions of confinement.  (Id. at ¶¶ 71-76).

Plaintiff's financial demands are less clear in this case.  It appears that he seeks to recover $100,000 compensatory and punitive damages from Defendants individually, and $100,000 jointly.  (Id. at ¶ 77).  Plaintiff also requests a restraining and/or protective order to stop retribution by city officials for Plaintiff's civil actions.  (Id. at ¶ 71).

### III. Discussion.

Pursuant to 28 U.S.C. § 1915(g), which governs suits filed in forma pauperis, a prisoner who "has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may

be granted" shall not be permitted to bring a civil action or proceeding under this section "unless the prisoner is under imminent danger of serious physical injury."  In this section, the Court will first explain that Plaintiff has brought three or more actions that have been dismissed for these reasons, and thus the "three strikes provision" applies to Plaintiff. The Court will then discuss Plaintiff's claim that he is in imminent danger.  A court may challenge this assertion.  Accordingly, this Court has examined the claim of imminent danger and determined that Plaintiff's allegations of imminent danger are not credible. Therefore, Plaintiff should not be permitted to proceed <u>in forma pauperis</u> in these actions. Because Plaintiff's actions lack merit and fail to state a claim for which relief may be granted, Plaintiff should not be given the opportunity to pay a filing fee; rather, dismissal of Plaintiff's four consolidated actions is proper.  Finally, the Court will explain why the issuance of a pre-filing injunction is an appropriate remedy.

### A. Three Prior Dismissed Cases.

In order for Plaintiff to fall under the "three strikes provision" of § 1915(g) which prohibits filing civil actions <u>in forma pauperis</u>, he must have three cases which were previously dismissed because the action was frivolous, malicious, or failed to state a claim.  <u>Andrews v. King</u>, 398 F.3d 1113, 1116, 1120 (9th Cir. 2005).  Plaintiff has had at least three civil actions dismissed as frivolous under 28 U.S.C § 1915(e) which satisfies the three strikes provision of § 1915(g).[13]

---

[13] At the Show Cause Hearing, Plaintiff articulated that several of his previously dismissed complaints were dismissed for failure to provide appropriate documentation, not for reasons that would counts as "strikes" pursuant to § 1915(g):

First, in Civil Action No. 97-6900, Plaintiff filed a <u>pro se</u> § 1983 civil rights complaint against multiple defendants alleging that his rights were violated when he was misdiagnosed as a paranoid schizophrenic.  <u>See John Hooks v. City of Phila. Pub. Def. Ass'n., et. al.</u>, Civ. Action No. 97-6900, Doc. No. 8 at *1 (Buckwalter, J.).  In order to bring suit under § 1983, Plaintiff had to allege that a person acting under color of state law deprived him of his constitutional rights.  <u>West v. Atkins</u>, 487 U.S. 42 (1988).  Judge Ronald L. Buckwalter found that Plaintiff failed to establish this burden and dismissed the action pursuant to §1915(e) as legally frivolous.  <u>See</u> Civ. Action No. 97-6900, Doc. No. 8 at *2-3.

Second, in Civil Action No. 98-1059, Plaintiff filed a <u>pro se</u> § 1983 civil rights complaint against multiple defendants alleging that he was unlawfully detained for two years without being brought to trial and seeking dismissal of all charges, immediate release from confinement, and damages.  <u>See John Hooks v. City of Phila et. al,</u>, Civ. Action No. 98-1059, Doc. No. 7 at *1 (Buckwalter, J.).  Judge Buckwalter dismissed Plaintiff's action as legally frivolous.  <u>Id</u>. at *2.  He explained that when a plaintiff advances an "indisputably meritless legal theory," dismissal of the complaint pursuant to 28 U.S.C. § 1915(e) is appropriate.  <u>Nietzke v. Williams</u>, 490 U.S. 319, 327 (1989).

---

PLAINTIFF:   I just want to remind you that . . . in regard to why these cases . . . all those other voluminous cases was [sic] dismissed as frivolous, what was the purpose as to why they were . . . because many has been just denied in forma pauperis based on I couldn't get a copy of my inmate account statement.

(<u>Id</u>. at 99-100.)  While Plaintiff has had cases dismissed for failure to provide his inmate account statement, Plaintiff nevertheless has had at least three previous actions dismissed for reasons which qualify as strikes under § 1915(g).

Third, Judge Buckwalter reached the same conclusion that Plaintiff's § 1983 claim was legally frivolous in Civil Action No. 01-5901.  See Hooks v. Johnson, et. al., Civ. Action No. 01-5901, Doc. No. 11 (dismissing Plaintiff's action under § 1915(e) as frivolous).

These "three strikes" led Judge Buckwalter to hold that Civil Action No. 06-5408, one of the four consolidated cases, was barred under § 1915(g).  However, on appeal, the Third Circuit remanded the case back to the District Court, stating as follows:

> Appellant filed several documents alleging abuses by Appellees.  "Under our liberal pleading rules, during the initial stage of litigation, a district court should construe all allegations in favor of the complainant."  See Gibbs v. Roman, 116 F.3d 83, 86 (3d. Cir. 1997), overruled on other grounds by Abdul-Akbar v. McKelvie, 239 F.3d 307, 313 (3d. Cir 2001) (en banc).  Should defendants challenge the complainant's allegations of imminent danger, as here, "the district court must then determine whether the plaintiff's allegation of imminent danger is credible . . . In resolving a contested issue of imminent danger, the district court may rely upon evidence supplied by sworn affidavits or depositions, or, alternatively may hold a hearing."  Id. at 86-87. . . If on remand, the District Court concludes that Appellant's allegations of imminent danger are not credible, Appellant must then be given the opportunity to pay the filing fee so that litigation may proceed.  If after [Alexander Brown] is notified that he must pay the full filing fee and is given a reasonable amount of time to comply . . . [and] he fails . . . the complaint may be dismissed.

Brown v. City of Phila., et. al., C.A. No. 07-3462, Order, at *2 (Trump Barry, J.).

Brown, C.A. No. 07-3462, Order, at *2.[14]

In accordance with this ruling, this Court held the Show Cause hearing on March 6, 2009, in order to assess Plaintiff's credibility.  The Court's findings from the hearing and its examination of Plaintiff's filings will be addressed in the following sections.

---

[14]    Plaintiff was given an opportunity to present evidence in accordance with this decision at the Show Cause Hearing held on March 6, 2009.  See discussion supra, pp. 4-8.  Moreover, Plaintiff has not paid any filing fee since the date of this decision, nor is there any prospect that it will ever be paid because he is in protective custody.

### B. Imminent Danger Exception

Because Plaintiff has "three strikes," Plaintiff should not be permitted to bring a civil action in forma pauperis, unless Plaintiff is under "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The three strikes provision and imminent danger exception were created in the Prison Litigation Reform Act ("the Act"). Boreland v. Vaughn, 2000 WL 254313 (E.D. Pa. 2000). The purpose of the Act was "to limit the filing of frivolous and vexatious prisoner lawsuits." Id. Congress' intent was not to block a prisoner's access to the federal courts, but to deny the privilege until the prisoner paid the filing fee. Id. Recognizing the difficulty prisoners would face in paying the filing fee, the imminent danger rule poses an exception to the court's ability to refuse prisoner filings. Id. at 315. However, when a Plaintiff has abused this exception, the Court must pursue alternative measures to curtail abuse of the adjudication process.

Throughout his litigious history, Plaintiff has alleged the "imminent danger" language in his complaints to shrewdly avoid dismissal under § 1915(g). Most often, the imminent danger language is followed by claims of "terroristic threats," "excessive use of force," and "conspiracy." With this language, it is assumed that a plaintiff has satisfied the exception even after three "strikes," but the court may challenge the "imminent danger" assertion sua sponte. Gibbs v. Roman, 116 F.3d 83, 86 (3d Cir. 1997). This Court must now determine whether there is evidence to support the allegation of imminent danger. Defendants bear the burden of producing evidence to preclude a prisoner from filing in forma pauperis, and once that evidence is introduced, the burden shifts to the plaintiff to show that he is actually in imminent danger of serious physical

19

harm.  Defendants' burden is satisfied by the existence of the three strikes against Plaintiff.  Plaintiff now bears the burden of showing he is in imminent danger.

In order for a prisoner to invoke the imminent danger exception, the imminent danger must exist at the time of filing.  Abdul-Akbar v. McKelvie, 239 F.3d 307, 312-13 (3d Cir. 2001).  A prisoner whose imminent danger has passed cannot reasonably be described as someone who "is" in danger, nor can the past danger be described as "imminent," as is statutorily required.  Ashley v. Dilworth, 147 F.3d, 715, 717 (8th Cir. 1998).  Therefore, Plaintiff should be precluded from filing complaints concerning past grievances that no longer cause him imminent danger.  Abdul-Akbar, 239 F.3d at 314. The standard the Act creates does not require Plaintiff's allegation be accompanied by an existing injury.  It is sufficient to demonstrate that the condition poses imminent danger. Gibbs v. Cross, 160 F. 3d 962, 965 (3d Cir. 1998).

After careful scrutiny of Plaintiff's claims before the Court, his testimony at the Show Cause Hearing, and review of the dockets and pleadings from Plaintiff's previous and current litigation, the Court finds that Plaintiff's assertion of the statutory language of "imminent danger of serious physical injury" in his complaints is without foundation or merit and that he cannot avail himself of the "imminent danger" shield in these cases. See Brown, 2007 WL 2221421 (E.D.Pa. 2007) (J. Buckwalter).  "More is needed . . . than just the recitation of language of the statute."  Id.

The Court reaches the conclusion that Plaintiff's claims of imminent danger lack credibility for a number of reasons.  First, no Court, nor counsel appointed by the Court, has found merit in any of Plaintiff's allegations.

Second, Plaintiff has failed to provide evidence in his filings or at the Show Cause hearing that support the claims.  While Plaintiff attaches exhibits to his filings, they are handwritten documents prepared by him that contain further allegations, not supporting evidence.  Plaintiff references videotapes in his filings, but none have ever been identified or produced.  When questioned about his claims during the Show Cause Hearing, Plaintiff's responses and explanations lacked specificity.  Plaintiff claimed that the civil rights violations he alleged in his complaints stemmed from "mainly . . . retribution, acts of reprisals, vendettas."  (Transcript at 28).  The Court repeatedly asked Plaintiff to put forth specific evidence to support his complaints, but Plaintiff failed.  The Court commented that it was trying to discover whether each defendant had done "something to violate [Brown's] civil rights."[15]  (Id. at 29).  Plaintiff responded:

> PLAINTIFF: And these officers, it's about them knowing they have a badge and they can do what they want to do.  Their job consists of security.  It's not about them particularly focusing on me, but they can do whatever they want to do to me.  And some officers, believe it or not, actually get caught up in the wake of things that may have nothing to do with knowing who this guy is, but just off the notion or off the action of another officer who want [sic] to be personal against that inmate may cause another officer to fall into that gap and be involved in something that he should not have been involved with in the beginning.

(Id. at 29-30.).

---

[15]     Plaintiff did not separately address the culpability of each defendant against whom he has filed suits.  He typically referred to the defendants and those responsible for his alleged injuries as the "officers," even though he has filed suit against many other individuals and entities.  Plaintiff also, as Mr. Kutzler asserted, made a concession regarding Saint Joseph's Hospital (only a defendant in civil action No. 05-4160).  (Id. at 82) ("I'm not really seeking to come back at St. Joseph with anything . . . I'll leave that alone.").  The Court finds this concession telling, informative and indicative of how Plaintiff would respond if questioned regarding each of the over forty individual and entity Defendants he has named in the consolidated cases.

Upon hearing this response, the Court expressed its concern that Plaintiff's grievances lacked specificity:

> COURT:     Now, you know, I hear your complaints, and what I'm hearing is a very generalized complaint against the prison system. . . .
> And I'm trying to make a levelheaded decision as to whether or not your complaints rise to the level of a violation of civil rights for purposes of my review.  I hear a lot of generalized complaints . . . . .
>
> . . .
>
> So, again, I want to go back to my . . . rule to show cause, and I – have you said whatever you want to say in terms of the merits of the case?

Plaintiff again failed to provide evidence that showed he was in imminent danger.  Instead, he responded:

> PLAINTIFF:  No, Your Honor, what I'm saying, Your Honor, we haven't had any trials on any of these cases.  All these cases that I filed, these are not cases about underwear too tight or socks too small or the shoes too big.  These are cases – these are not frivolous cases.  These are cases of uses of excessive force.  These is [sic] cases of – I mean, brutalizing, bone breaking cases, you know what I mean?
>
> The case – all right, first, let me go to the reason why I filed these cases while I'm incarcerated and why it appears that I continue to be incarcerated.  Officers are locking me up for unfounded charges, who are related to some of these officers in the prison, or who are officers that used to be prison officers that are doing these things intentionally.  And I know some of these things are hard to believe.  But in the world we live in today, nothing is hard to believe.  Maybe shocking, yeah, but not hard to believe.  These things actually happened.  And the proof is in the pudding to prove it.

(Id. at 31-33.).

The Court then asked of Plaintiff, again, "Tell me why your complaints

have merit."  In response, Plaintiff was able to recall one specific allegation that

he made in civil action No. 05-4160.  Plaintiff recalled an inmate attacking him

with a commissary box while Plaintiff was confined to his cell.  (Id. at 34).

Plaintiff alleged that this incident was part of a conspiracy orchestrated by a

prison guard:

> PLAINTIFF:  [T]he officer . . . the way I seen [sic] it . . . encouraged and paid . . . a[n] inmate to come to my cell and attack me with a big commissary box.
>
> During that time I was supposed to been [sic] out exercising, no [sic] supposed to be around me. . . . And I had a broken bone in my hand when I tried to block that box from busting my head wide open.  And I had to get surgery and all that was done in the Court.

(Id. at 34-35).

But when the Court tried to understand what had happened, and asked what led to

the altercation, Plaintiff only replied:

> PLAINTIFF:  Retaliation.  Officers have access of doing what they want to do.  They can pay inmates to do whatever they want him to do.  You know, these – what I'm saying is officers have vendettas against me.  I went to Court against officers on behalf of other inmates.  You see what I'm saying?

(Id. at 35).  The Court again noted that Plaintiff was making a "very generalized

statement."  (Id.).  Plaintiff did not specify who was involved, nor did he provide

any records of the injury or physical evidence.

The Court and Plaintiff then agreed that Plaintiff would specifically address the

items in the Show Cause Order.  In explaining why the consolidated cases should not be

dismissed as frivolous, malicious, or for failure to state a claim, Plaintiff only replied that

the Defendants had not challenged the allegations on the merits and argued that if the

cases lacked merit, they would have already been dismissed.  (Id. at 42-44).  He did not provide any reasons why the actions were meritorious.  (Id.).  Plaintiff claimed he was in imminent danger because officers have beaten him up, or paid inmates to beat him up.  (Id. at 48-52).  However, he did not have any medical records or accounts of the assaults.  Despite the numerous brutalities and gross uses of excessive force that Plaintiff claims to have repeatedly suffered throughout his Complaints, the Court finds that, at the Hearing, he did not have any visible injuries and that Plaintiff was articulate and demonstrated a capacity to comprehend and respond to questions coherently.  (Id.).  Examining the record as a whole, the Court does not find Plaintiff's generalized allegations to be credible.

Third, the Philadelphia Prison system has taken steps to protect Plaintiff and ensure that Plaintiff is not in imminent danger.  Deputy Warden May testified that he believes "every time Mr. Brown is incarcerated in the Philadelphia Prison System, he's placed in protective custody."  (Id. at 63.).  Except for times when Plaintiff at his own request is taken to Prison Health Services, Plaintiff has been in protective custody, again at his own request, throughout the time period in which the four consolidated cases and numerous motions therein were filed.  As explained, this means that inmates have no occasion to have contact with Plaintiff and commit brutalities.

Fourth, the Court finds that if Plaintiff is in any danger, it is because of his own actions.  No plaintiff should be able to state a claim of imminent danger if the plaintiff is responsible for placing himself in danger.  At the Show Cause Hearing, Deputy Warden May explained that Plaintiff creates chaos, including outbursts, flooding of cells, and smearing of and writing with feces.  (Id. at 73-74).  Plaintiff may be in unsanitary

conditions, as he alleges, if he takes actions such as writing on the wall with his feces. He may believe he is danger when he has to be subdued with reasonable force for his own conduct.  However, Plaintiff cannot claim "imminent danger" as a mechanism for avoiding the three strikes rule when he is responsible for placing himself in a dangerous situation.

Finally, many courts have held that several types of allegations similar to Plaintiff's are incredible and/or insubstantial to meet the "imminent danger" standard, including Plaintiff's allegations that: (a) he suffered "terroristic" threats; (b) he suffers from depression; (c) he was the victim of solicitation by prison officials to have other inmates harm or murder him; (d) prison officials placed him in imminent danger by placing him with other prisoners; (e) past threats constitute imminent danger; (f) he subjectively believed he was subject to imminent danger by being kept in his cell during a sprinkler malfunction; (g) he is a victim of a conspiracy to deny him access to the court system; and (h) he was subject to ongoing threats to his life and safety due to his litigious history.[16]

---

[16]     See Merriweater v. Reynolds, 2008 WL 2076731 at *3 (D.S.C. 2008) (rejecting allegations of threats, enemies, and danger from prison gangs as "unsupported, vague, self-serving, conclusory speculation" that does not establish imminent danger); Burghart v. Corr's Corp. of America, 2008 WL 619308 at *1 (W.D. Okla. 2008) (complaints of depression did not meet standard); Ticker v. Dawkins, 2008 WL 510199 at *2 (W.D.N.C. 2008) (broad and unsupported allegation that superintendent had solicited prisoners to murder plaintiff does not meet imminent danger standard); Leach v. Brownlee, 2007 WL 3025092 at *2 (E.D. Ark. 2007) (holding that prospect of being sent to sex offender program and being housed with sex offenders, who, the plaintiff said, might cut his throat was not specific enough to show imminent danger); Rodriguez v. Tex. Dept. of Pub. Safety, 2007 WL 162830 at *2-3 (E.D. Tex. 2007) (stating, after a hearing where plaintiff reported a three-month-old threat to "bash his brains in" and his cell door having been left open on the night of a homicide, that plaintiff's subjective belief that he was in danger was not supported by objective evidence); Skillern v. Jackson, 2006 WL 1687752 at *2 (S.D. Ga. 2006) (rejecting allegation that denial of access to courts had and would

Following the Show Cause Hearing, the Court is unconvinced that Plaintiff has established anything more than generalized complaints against the prison system.  Prisons have a right to enforce their rules and regulations.  Prisoners must understand that these rules and regulations are in place for legitimate reasons.  Plaintiff has been given the opportunity to present evidence that the Philadelphia Prison System has violated his rights and that other named defendants have inflicted injuries upon Plaintiff for which he is entitled to recover.  Plaintiff has failed to present any such evidence.  He has only made generalized, unsupported allegations while asserting that he is in imminent danger.

### C. Dismissal of Plaintiff's Cases

This Court holds that the appropriate remedy is the dismissal of Plaintiff's four consolidated cases.  Plaintiff has "three strikes" and cannot tenably claim that he is in imminent danger as discussed in the prior section.  Plaintiff brought three of these civil actions in forma pauperis pursuant to 42 U.S.C. § 1983.  Proceeding in forma pauperis is a privilege, not a right.  Davison v. Joseph Horne & Co., 265 F.Supp. 750, 753 (3d. 1967).  Plaintiff has abused the privilege, and should not be permitted to proceed in forma pauperis.  Because this Court also finds that Plaintiff's four consolidated cases are frivolous and fail to state a claim, Plaintiff need not be given the further opportunity to pay a filing fee.  Dismissal of the four consolidated cases is within the Court's discretion and is the appropriate remedy.  Id.

---

constitute imminent danger); Mathis v. Smith, 2006 WL 1342840 at *1 (11th Cir. 2006) (unpublished) (affirming rejection on credibility grounds of claim of ongoing threats by guard because of prisoner's prior false representations, history of frivolous litigation, and unrelated allegations in his complaint).

Pursuant to the statute that governs proceedings <u>in forma pauperis</u>, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case <u>at any time</u> if the court determines" that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks relief from an immune defendant. 28 U.S.C. § 1915(e)(2)(B) (emphasis added). This provision was created to protect the court system and defendants from being inundated with meritless claims by <u>pro se</u> litigants.

Before the Court are Plaintiff's four consolidated cases. After careful inspection of Plaintiff's complaints, amended complaints, numerous motions, and the transcript of the Show Cause Hearing, the Court finds that Plaintiff's accusations are meritless and fail to adequately state a claim upon which relief can be granted. Within those four cases, Plaintiff has managed to file over one hundred and fifty motions, many seeking reconsideration of Judge Buckwalter's prior rulings. Despite the numerous filings, Plaintiff has failed to back up his assertions with any facts or evidence. Furthermore, an adverse inference can be drawn from Plaintiff's assumption and use of multiple identities, "Alexander Brown," "John Hooks," and "Gene Bowman." See <u>Smith v. Litton Loan Serv., LP, et. al.</u>, 2005 WL 289927, at *13 (E.D. Pa. 2005) (drawing the conclusion from Plaintiff's repeated filings under multiple identities that Plaintiff's objective was not justice, but instead harassment and delay). Because Plaintiff's claims are meritless and fail to state a claim under which relief may be granted, they should be dismissed pursuant to § 1915(e).

Dismissal is also an appropriate remedy, taking into account other goals of the judicial system. Frivolous claims amount to a waste of judicial resources and divert

attention from processing good faith claims.  See, e.g., In re Green, 598 F.2d 1126, 1127-28 (8th Cir. 1979).  Under Federal Rule Civil Procedure 1, the fundamental duties of the court are to: (a) maintain justice; (b) avoid delay; and (c) improve the efficiency of dispute resolution.  See In re Tyler, 677 F.Supp. 1410, 1412 (D.Neb. 1987).  Federal courts have a duty to assert authority in protecting the integrity of the court, as well as defendants and litigants from exposure to frivolous claims.  Chatmon v. Churchill Trucking Co., 467 F.Supp. 79, 83 (D.Mo. 1979).  In Tyler, the Court explained that while the Plaintiff (who had filed over one hundred complaints) had gained exposure to the court system, he was unable to determine when his constitutional rights were violated.  Tyler, 677 F.Supp. at 1413.  The Court acknowledged that because the plaintiff had limited amounts of funding and resources, some complaints were tough to read and decipher.  Id. at 1414.  However, the Court found that the plaintiff had "flagrantly and repeatedly abused judicial process" by filing a multitude of meritless lawsuits.  Id.  In order to protect the integrity of the Court, the plaintiff was limited to one filing a month.  Id.

Plaintiff is similarly situated to the plaintiff in Tyler.  Plaintiff has filed numerous meritless claims against various defendants.  Plaintiff's total number of complaints has already reached at least forty.  Like the plaintiff in Tyler, no court has determined that Plaintiff Alexander Brown's constitutional rights were ever violated.  It is the duty of this court to protect the integrity of other litigants as well as its own integrity.  Therefore, the Court finds that dismissal of Plaintiff's four consolidated cases is proper.  Furthermore, given the volume of Plaintiff's unmeritorious and frivolous filings, the law provides for

an additional, balanced sanction to further protect the court and defendants from such claims.

### D. Pre-Filing Injunction

A court may impose "necessary sanctions" on a plaintiff when representations are made to the court that motions: (1) are presented for an improper purpose; (2) are frivolous; and (3) contain factual contentions that lack evidentiary support. Fed. R. Civ. P. 11 (b)-(c). An injunction is an example of a sanction that may be imposed. Federal courts have broad discretion to protect their jurisdiction. Lysiak v. Comm'r of Internal Revenue, 816 F.2d 311, 313 (7th Cir. 1987). They are vested with equitable power to issue injunctions when necessary to effectuate orders of the court and to avoid re-litigation in the future. In re Packer Ave. Assoc., 884 F.2d 745, 747 (3d. Cir. 1989). Specifically, pre-filing injunctions are designed to permit a district court "to issue such injunctions to preclude abusive, groundless and vexatious litigation." Brow v. Farrelly, 994 F.2s 1027, 1038 (3rd Cir. 1993). Such an injunction only allows a plaintiff to file an action upon obtaining leave of court and meeting other requirements described in the pre-filing injunction order. A pre-filing injunction can be imposed pursuant to the All Writs Act, 28 U.S.C. § 1651. Gagliardi v. McWilliams et. al., 834 F.2d 81, 83 (3d Cir. 1987). The All Writs Act provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651.

When considering imposition of a pre-filing injunction, <u>pro se</u> litigants are not entitled to special treatment.  They likewise do not have license to abuse the judicial process with impunity.  <u>Mallon v. Padova</u>, 806 F. Supp. 1189 (E.D. Pa. 1992).

> Often these litigious plaintiffs [<u>pro se</u> and <u>in forma pauperis</u>] are repetitious, frivolous, and even malicious in their pleadings . . . Consequently, we concluded, based on previous decisions, that district courts in this circuit may issue an injunction to require litigants to obtain the approval of the court before filing their complaints.

<u>Abdul-Akbar v. Watson</u>, 901 F.2d 329, 332 (3rd Cir. 1990).

The issuance of a pre-filing injunction is "an extreme remedy that must be narrowly tailored and sparingly used."  <u>Abdul-Akbar</u>, 901 F.2d at 333.  However, as the Court explained in <u>Abdul-Akbar</u>, when a plaintiff brings claims on the same grounds as previously adjudicated claims, the claims are false, and controlling law precludes the claims, a pre-filing injunction is proper.  <u>Id.</u>  In <u>Abdul-Akbar</u>, the prisoner had previously exhausted his <u>in forma pauperis</u> status when the court considered a pre-filing injunction. The Court discussed that "[d]ismissal under § 1915(d) is appropriate when the claims are based on an indisputably meritless legal theory or on clearly baseless factual contentions."  <u>Id</u>. (<u>quoting</u> <u>Wilson v. Rackmill</u>, 878 F.2d 772 (3rd Cir. 1989)).  The Third Circuit ultimately upheld the pre-filing injunction order that was issued against the plaintiff by the District Court:

> More specifically, when a district court concludes that a litigant has abused the judicial process by filing a multitude of frivolous § 1983 cases in a relatively brief period of time and will continue to file such cases unless restrained, we hold that the court may enter an injunction directing that the litigant not file any section 1983 claims without leave of court and that in seeking leave of court, the litigant certify (1) that the claims he wishes to present are new claims never before raised and disposed of on the merits by any federal courts, (2) that he believes the facts alleged in his complaint to be true, and (3) that he knows of no reason to believe his claims are foreclosed by controlling law. Such an injunction should state

that upon a failure to certify or upon a false certification, the litigant may be found in contempt of court and punished accordingly.[17]

Abdul-Akbar, 901 F.2d at 333.

The Abdul-Akbar decision serves as a basis for the proposed action against Plaintiff Alexander Brown. The Court is aware that serving Plaintiff with a pre-filing injunction is an extreme measure that is only appropriate in limited situations. However, Plaintiff's history of filing numerous false claims on the same grounds as previously adjudicated claims, as well his repeated use of the imminent danger language which abuses the privilege of filing in forma pauperis, justify this remedy. During the show cause hearing, Plaintiff admitted to filing multiple lawsuits stemming from the same subject matter. The Court was summarizing each of Plaintiff's open complaints, and when the Court began summarizing Civil Action No. 08-3369, Plaintiff interrupted:

PLAINTIFF:  Basically some were the same, Your Honor.

COURT:      Hmm?

PLAINTIFF:  Basically sum [sic] were the same.

(Transcript at 18).

The Court has also satisfied the notice requirements for imposing a pre-filing injunction. Improper notice is one of the reasons courts have deemed pre-filing injunctions to be inappropriate. For example, the pro se litigant in In re Oliver had filed fifty-one frivolous complaints when the District Court served him with a pre-filing injunction. 682 F.2d at 443, 446 (3rd Cir. 1982). On appeal, the Third Circuit stated that

---

[17] Although these sanctions are available, the Court, given the facts and circumstances of this case, has decided that fashioning an injunction similar to the one imposed by District Judge Louis H. Pollak in In Re: Joaquin Irwin Foy, Civ. Action No. 89-0026, is more appropriate here.

The All Writs Act authorizes a district court "to issue an order restricting the filing of meritless cases by a litigant whose manifold complaints raise claims identical or similar to those that have already been adjudicated." Id. at 445.  The Court further noted that "[a]ccess to the court is a fundamental tenet to our judicial system; legitimate claims should receive a full and fair hearing no matter how litigious the plaintiff may be." Id. at 446.  Litigiousness alone will not support an injunction of plaintiff's filing activities. Id. The Court discussed that despite a pre-filing injunction being an extreme sanction, the injunction was appropriate given that the plaintiff continually filed frivolous complaints. Id. at 445.  The Court held that it could not uphold the injunction, however, because the prisoner had to be provided a forum that provided him notice and an opportunity to be heard in opposition the order. Id. at 446.

In Eash v. Riggins Trucking, Inc., the Court held that as a general practice pre-filing injunctions should not be imposed by a court without prior notice and some occasion to respond.  757 F.2d 557, 570 (3d Cir. 1985).  In Gagliardi, the Court held that the pre-filing injunction imposed on the pro se plaintiff should be vacated because the Court did not provide the plaintiff specific notice of its intention to serve the proposed injunction on the plaintiff. Id.  Because of that holding, it was not necessary to determine whether the pro se plaintiff's filing of seven frivolous lawsuits was an abuse of the judicial process.  Gagliardi, 834 F.2d at 83.  A similar conclusion was reached in Williams v. Cambridge Integrated Serv. Group et. al., where the Third Circuit vacated the District Court's sua sponte decision to serve a pre-filing injunction on the litigious plaintiff.  148 Fed.Appx. 87, 90 (3d Cir. 2005) (citing Galiardi, 834 F.2d at 83).

Here, Plaintiff was provided with adequate notice that the Court was considering serving the Plaintiff with a pre-filing injunction in its February 18, 2009 Show Cause Orders. The Court gave the Plaintiff the opportunity to appear on March 6, 2009 and to show why the imposition of a pre-filing injunction was not appropriate. At the hearing, Plaintiff failed to provide the Court with evidentiary proof that any of his subjective claims contained merit or persuasive reasons why a pre-filing injunction should not be issued.

Plaintiff Alexander Brown has inundated the Court with a multitude of frivolous claims for over a decade. In that decade, he has failed to show even once that his claims contain merit and that he should be awarded economic damages. Although Plaintiff has repeatedly asserted that he is in imminent danger, these allegations have not been factually supported. If the Court was to simply deny Plaintiff's claims as moot or dismiss them under other reasoning, the Court would not be serving justice because Plaintiff would continue to file new claims, based on the same meritless allegations. The Court, in imposing a pre-filing injunction, does not intend to deprive Plaintiff of a forum in which he will receive full and fair judicial process if he is able to adequately state a claim. In imposing a pre-filing injunction, Plaintiff still has the ability to file actions. Requiring Plaintiff to seek leave of the Court when pursuing future actions will allow Plaintiff's actions to be addressed by the Court if they adequately state a claim, but will not waste Court resources and inconvenience defendants in the event that they lack merit. For these reasons, the Court has decided to impose on Alexander Brown a pre-filing injunction to limit vexatious filings in the future. Plaintiff is enjoined from instituting any new pro se suits in this Court, under any name previously mentioned in this Opinion or any other

name that Plaintiff may assume in the future, without prior permission of a Judge of this Court.  Any request for permission to file a complaint must be accompanied by (a) a copy of the proposed complaint, (b) a copy of this Opinion and the attached Order, and (c) a statement listing the titles and docket numbers of all previous lawsuits involving the same defendants or the same or similar subject matter as are involved in the proposed complaint.

## VII. Conclusion.

For the foregoing reasons, the Court dismisses all of Plaintiff's complaints and outstanding motions in civil actions 05-4160, 06-2496, 06-5408, and 08-3369.  This Court further holds that Plaintiff shall be issued a pre-filing injunction pursuant to 28 U.S.C. 1651(a) that shall require Plaintiff to seek leave of court to pursue litigation in the future.

An appropriate Order follows.